J-S08032-26                    2026 PA Super 150

COMMONWEALTH OF PENNSYLVANIA

v.

MELVIN CRAWFORD

Appellant

: IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:
: No. 1890 EDA 2025

Appeal from the Judgment of Sentence Entered June 24, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0001375-2023

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

OPINION BY NICHOLS, J.:                              **FILED JULY 15, 2026**

Appellant Melvin Crawford appeals from the judgment of sentence imposed following his conviction for strangulation, simple assault, criminal mischief, possession of an instrument of a crime (PIC), terroristic threats, and harassment.[1]  On appeal, Appellant's counsel, Harry Cooper, Esq. (Appellate Counsel), filed a petition to withdraw and an **Anders**/**Santiago** brief.[2]  After careful review, we quash this appeal.

The trial court set forth the facts of this case as follows:

Pattrice Washington (hereinafter, [the] Victim) was Appellant's girlfriend [during November 2022,] and had been since March of 2020.  On November 25, 2022, Thanksgiving, Appellant and [the] Victim spent the holiday separated with their respective families.

_____

[1] 18 Pa.C.S. §§ 2718(a)(1), 2701(a)(1), 3304(a)(5), 907(a), 2706, and 2709(a)(1), respectively.

[2] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

[The] Victim went to her son's home in North Jersey early in the morning to help him prepare for dinner and did not return to her home until after midnight the following morning. When she arrived at her home, she went straight to bed and forgot to take her phone out of her car. She awoke around 8:00 a.m. that morning (on November 26, 2022) and immediately retrieved her phone and discovered that Appellant, angry that [she] had not contacted him, had left her numerous calls and messages. The situation caused a "disagreement" between [the] Victim and Appellant, but [the] Victim believed Appellant had accepted her apologies and moved on.

On November 30, 2022, [the] Victim and Appellant were asleep in Appellant's office in Bristol Township, Bucks County, when Appellant suddenly arose and woke up [the] Victim, telling her he had a bad dream. Appellant asked [the] Victim where her son lived and she asked why he needed that information. Appellant grew agitated and told her not to answer a question with a question. Appellant then stood up, turned on the light, and told [the] Victim she was "too private" with him and that he did not believe their relationship would work out. [The] Victim began to leave, but Appellant said that he did not think she should go and began asking her more questions. He then demanded her phone, to which [the] Victim complied, and Appellant searched through its contents. Appellant first searched through the locations [the] Victim had recently put into her GPS app and demanded [the] Victim tell him what, or who, was at each location. Then Appellant searched through [the] Victim's photos and videos and became agitated, telling [the] Victim that she does not know how to treat a man and slamming her phone on the table.

As [the] Victim jumped up to see if her phone was broken, Appellant ran over and put both of his hands around her neck, digging his nails into her skin and squeezing so tightly that she could not breathe. [The] Victim began to "black out" and could tell Appellant was talking but could not hear what he was saying. Appellant threw [the] Victim onto the sofa while still squeezing her neck and putting his forearms into her chest and leaning his body weight on her chest. Appellant released his left hand from [the] Victim's neck and threatened to punch her. He then reached over and grabbed a gun from the corner of the sofa, standing overtop of [the] Victim as she remained trapped on the sofa in a seated position. Appellant held the gun to [the] Victim's face and asked her if she had ever been pistol whipped before smacking her with his free hand. [The] Victim testified that the slap was so hard that

she saw flashes, tasted blood in her mouth, and dealt with a lot of pain and redness afterward. As [the] Victim reached up to feel her cheek, Appellant threatened that he would "end" her. Appellant began to move away and as soon as he turned his back to [the] Victim, she used the opportunity to run to her car and escape. [The] Victim first drove to a nearby parking lot to compose herself, then drove home to take a shower. She noticed redness, swelling, cuts, and scratches on her back, neck, and face. After cleaning herself off, [the] Victim took photographs of her injuries and reported the incident to police that evening.

Trial Ct. Op., 10/27/25, at 1-3 (citations omitted and some formatting altered).

On March 6, 2024, after a bench trial, Appellant was found guilty of the above stated offenses.[3] On June 24, 2024, the trial court imposed a sentence of three to seven years' incarceration.[4,5]

On July 26, 2024, Appellant filed an untimely *pro se* notice of appeal. Three days later, on July 29, 2024, Appellant filed a motion for appointment of counsel. The trial court appointed the Bucks County Public Defender's Office to represent Appellant for his appeal on August 14, 2024. On October 1, 2024, the Public Defender's Office filed a praecipe to withdraw Appellant's appeal. *See* Praecipe to Withdraw, 2203 EDA 2024, 10/1/24. This Court discontinued

---

[3] Appellant was represented by Abigail B. Cohen, Esq. at the bench trial. *See* Entry of Appearance, 4/4/23; *see also* N.T., 3/6/24, at 1.

[4] Appellant was represented by Louis R. Busico, Esq. at sentencing. *See* Entry of Appearance, 4/29/24; *see also* N.T., 6/24/24, at 1.

[5] The trial court also ordered Appellant to not have contact with the Victim and to pay court costs. *See* Sentencing Order, 6/24/24.

the appeal in response to Appellant's praecipe. *See* Discontinuance Notice, 2203 EDA 2024, 10/1/24.

On December 5, 2024, the Public Defender's Office filed a Post Conviction Relief Act[6] (PCRA) petition alleging that prior counsel was ineffective for failing to file a timely notice of appeal as Appellant requested. *See* PCRA Petition, 12/5/24, at 3 (unpaginated). The trial court granted Appellant's PCRA petition and reinstated his direct appeal rights *nunc pro tunc* on December 10, 2024.

On January 9, 2025, Appellant filed a *nunc pro tunc* notice of appeal. Thereafter, the Public Defender's Office filed a petition for appointment of private counsel, claiming that there was a conflict of interest based on allegations Appellant made regarding his dissatisfaction with the legal representation provided by the Public Defender's Office. *See* Petition for Appointment of Private Counsel, 2/20/25. Accordingly, on February 21, 2025, the trial court appointed Harry Cooper, Esq. to represent Appellant for his appeal. *See* Trial Ct. Order, 2/21/25. However, Attorney Cooper failed to file a brief and Appellant's appeal was dismissed by this Court on May 13, 2025. *See* Order, 99 EDA 2025, 5/13/25.

On July 3, 2025, the trial court entered an order reinstating Appellant's direct appeal rights *nunc pro tunc* for the second time. In its order, the trial court cited ***Commonwealth v. Lantzy***, 736 A.2d 564 (Pa. 1999) and

---

[6] 42 Pa.C.S. §§ 9541-9546.

*Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007), cases which both address PCRA claims concerning the ineffective assistance of counsel. However, the record does not reflect that Appellant filed a PCRA petition. In its opinion, the trial court indicated that the order was granted "by agreement of the parties." *See* Trial Ct. Order, 7/3/25. On July 17, 2025, Appellant filed another *nunc pro tunc* notice of appeal. On December 22, 2025, Attorney Cooper filed an *Anders*/*Santiago* brief.

Before addressing counsel's *Anders*/*Santiago* brief and petition to withdraw, we must first determine whether the PCRA court had the authority to restore Appellant's rights to a direct appeal *nunc pro tunc* in the absence of a filed PCRA petition. *See Commonwealth v. McCollum*, 1889 MDA 2019, 2020 WL 7706810, at *5-7 (Pa. Super. filed Dec. 29, 2020) (unpublished mem.) (raising a PCRA court's authority to grant relief absent the filing of a PCRA petition *sua sponte*);[7] *Roviello v. Roviello*, 323 A.2d 766, 772 (Pa. Super. 1974) (stating that "when a court has jurisdiction of the action and makes an order, but the order is beyond its powers, it is a nullity"); *Commonwealth v. Myers*, 325 A.3d 790, 793 (Pa. Super. 2024) (explaining that this Court may raise the appealability of an order *sua sponte* as it implicates this Court's jurisdiction); *see also Commonwealth v. Green*, 265

---

[7] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

A.3d 798, 801 (Pa. Super. 2021) (stating that where "the [trial] court's order is a legal nullity, th[e] appeal [from that order] is also a legal nullity").[8]

In the absence of a PCRA petition, a PCRA court lacks the authority to *sua sponte* reinstate a defendant's post-sentence motion or direct appeal rights *nunc pro tunc*. **See McCollum**, 2020 WL 7706810, at \*5; **see also Commonwealth v. Turner**, 73 A.3d 1283, 1285 n.2 (Pa. Super. 2013); 42 Pa.C.S. § 9545(a). Where a PCRA court grants PCRA relief *sua sponte*, we are compelled to quash the appeal. **See McCollum**, 2020 WL 7706810, at \*6-7; **see also Green**, 265 A.3d at 801.

Here, the record does not contain a PCRA petition seeking reinstatement of Appellant's direct appeal rights *nunc pro tunc* based on Attorney Cooper's

---

[8] We are cognizant of the distinction between the terms "jurisdiction," "power," and "authority," as used in 42 Pa.C.S. § 9545. **See Commonwealth v. Morris**, 771 A.2d 721, 736-37 (Pa. 2001) (discussing the difference between these terms). While the **Morris** Court stated that 42 Pa.C.S. § 9545(a) "clearly relate[s] to the jurisdiction of the [PCRA] court," the Court also concluded that "authority and jurisdiction are not synonymous," as jurisdiction refers to the competency of a court to determine a general class of controversies whereas authority refers to the ability of a court to "order or effect a certain result." **See id.** at 737. Section 9545(a), which underpins our disposition in this case, states that "no court shall have **authority** to entertain a request for any form of relief in anticipation of the filing of a [PCRA] petition." **See** 42 Pa.C.S. § 9545(a) (emphasis added). Accordingly, it appears that this portion of Section 9545(a) relates to the **authority** of a trial court to grant PCRA relief absent a filed petition rather than the trial court's **jurisdiction**. **See Morris**, 771 A.2d at 736-37. However, because an appeal from a legally null order renders the appeal a legal nullity, **see Green**, 265 A.3d at 801, the distinction between "authority" and "jurisdiction" is irrelevant to our disposition.

failure to file a brief.[9]  Accordingly, the trial court erred in granting PCRA relief *sua sponte*, which it did not have the power to do.  **See McCollum**, 2020 WL 7706810, at *5; **Turner**, 73 A.3d at 1285 n.2; 42 Pa.C.S. § 9545(a).  Under such circumstances, we are constrained to quash the appeal.  **See McCollum**, 2020 WL 7706810 at *6-7; **see also Green**, 265 A.3d at 801.

Appeal quashed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2026

---

[9] We also note that Attorney Cooper is barred from arguing his own ineffective assistance.  **See Commonwealth v. Spotz**, 18 A.3d 244, 329 n.52 (2011).